**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Craig A. Ami,<br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No.2:22-CV-01202-SMB<br><br>**ORDER** |

  At issue is the denial of Plaintiff Craig A. Ami's Application for Social Security Disability Insurance ("SSDI") benefits by the Social Security Administration ("SSA") under the Social Security Act (the "Act"). Plaintiff filed a Complaint, (Doc. 1), and an Opening Brief, (Doc. 10), seeking judicial review of that denial. Defendant SSA filed an Answering Brief, (Doc. 11), to which Plaintiff replied, (Doc. 12). The Court has reviewed the parties' briefs, the Administrative Record, (Doc. 8), and the Administrative Law Judge's ("ALJ's") decision, (Doc. 8-3 at 29–42), and will affirm the ALJ's decision for the reasons addressed herein.

**I. BACKGROUND**

  Plaintiff filed an Application for SSDI benefits in June of 2019, alleging a disability beginning in January of 2017. (Doc. 8-8 at 12–37.) Plaintiff's claim was initially denied in July of 2019. (Doc. 8-3 at 32.) A hearing was held before ALJ Sally Reason on January 11, 2021. (*Id.* at 42.) After considering the medical evidence and opinions, the ALJ determined that Plaintiff suffered from severe impairments including obesity and lumbar degenerative disk disease. (*Id.* at 35.) However, the ALJ concluded that, despite these

impairments, Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b). (*Id.* at 38.) Consequently, Plaintiff's Application was again denied by the ALJ on January 22, 2021. (*Id.* at 42.) Thereafter, the Appeals Council denied Plaintiff's Request for Review of the ALJ's decision—making it the final decision of the SSA Commissioner (the "Commissioner")—and this appeal followed. (Doc. 1.)

## II. LEGAL STANDARDS

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

## III. DISCUSSION

Plaintiff argues that the ALJ committed materially harmful error in evaluating Plaintiff's symptom testimony and failing to provide a significant number of jobs that match Plaintiff's RFC. (Doc. 10.) The Commissioner argues that the ALJ's opinion is supported by substantial evidence and contains no legal error. (Doc. 11.) The Court has reviewed the medical and administrative records and agrees with the Commissioner for the following reasons.

### A. Plaintiff's Symptom Testimony

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an

impairment that "could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)) (internal quotation marks omitted). Second, absent evidence of malingering, an ALJ may only discount a claimant's allegations for reasons that are "specific, clear and convincing" and supported by substantial evidence. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).

"[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings are insufficient. *Id.* "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014). "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112. For instance, the ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1040).

Plaintiff argues the ALJ committed materially harmful error by rejecting Plaintiff's testimony when limitations stemming from his symptoms would otherwise preclude his ability to work. (Doc. 10 at 9–14.) Plaintiff further argues that the ALJ did not clearly explain how his testimony is inconsistent with other parts of the record. *(Id.)* The Commissioner argues the ALJ's discounting of Ami's testimony is supported by substantial evidence. (Doc. 11.) The Commissioner further argues the ALJ gave valid reasons for discounting Plaintiff symptom testimony including that his treatment is conservative, he had a gap in his work history prior to the alleged disability, he is able to perform daily tasks, and his impairments can be successfully mitigated by prescribed treatment. *(Id.)*

Here, Plaintiff testified that he needed constant breaks at his las job due to pain, can "barely stand an hour," but is able to live alone and cited no problems being able to perform

daily living activities. (Doc.10 at 7, Doc. 8-3 at 39.) The ALJ, although noting that Plaintiff likely has symptoms that align with his diagnosed impairment, found that Plaintiff has "generally been treated with conservative methods including various . . . injections, physical therapy and medications" and that none of these medications lead to symptoms that otherwise inhibit his ability to work. (Doc. 8-3 at 39.) The ALJ also discounted Plaintiff's symptom testimony because medical records show a gap in treatment, which undermines the severity he alleges. (Doc. 8-3 at 40.) The Court agrees with the Commissioner that the ALJ gave specific reasons for finding Plaintiff's testimony is not credible—including the gap in treatment, the absence of a clinical disability finding, and Plaintiff's self-professed ability to perform daily tasks. (Doc. 8-3 at 39–40.); *see Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) ("The ALJ may consider many factors in weighing a claimant's credibility," including "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment."). Although Plaintiff may disagree with how the ALJ interpreted the record and his subjective symptom characterization, the ALJ did offer sufficient reasoning to discount his testimony.

Therefore, the Court finds the ALJ did not commit materially harmful error by rejecting Plaintiff symptom testimony.

### B.  RFC and Job Determination

Generally, to qualify for disability, a Plaintiff must be unable to perform a significant number of jobs in the national economy, not merely be unable to perform the same job they had worked before injury. *See* 20 C.F.R. § 404.1560(c). When making this determination, the ALJ must consider a plaintiff's RFC, age, education, and work experience. 20 C.F.R. pt. 404, subpt. P., app. II. The ALJ's RFC determination should align with potential occupations under the CFR guidelines. If there is a substantial number of occupations a plaintiff could perform despite symptoms, then he will be found not to be disabled.

Plaintiff argues that the ALJ's determination of which jobs Plaintiff could still perform are incongruent with the ALJ determined RFC. Specifically, Plaintiff argues that

the specified "jobs" require Plaintiff to go beyond his RFC limitation of "simple, repetitive tasks, occasional interaction with supervisors, coworkers and the general public and working in a 'low stress' environment with low production demands." (Doc. 12 at 8; Doc. 8-3 at 41.)  The Commissioner argues that "occupation" is a broad term and the DOT definitions are just examples of what may be required.  (Doc. 11 at 13.)  Because of this, an expert's job suitability recommendation may not always align precisely with an exact definition of a job, therefore Plaintiff's RFC may still align with the occupations listed by the ALJ.

Here, the ALJ relied, in part, on a vocational expert's ("VE") analysis to determine the possible occupations Plaintiff was still able to perform.  (Doc 8-3 at 41.)  The VE testified that given all the relevant factors, including the RFC, Plaintiff was still able to perform light unskilled work that would translate to jobs like photocopy machine operator, mail clerk, and marker.  (*Id.*)  An ALJ is not required to press a VE on their recommendation where the conflict between the RFC and his recommendation is not "apparent or obvious." *Gutierrez v. Colvin*, 844 F.3d 804, 807–08 (9th Cir. 2016).  Further, ALJ's do not need to ask follow-up questions where the "frequency or necessity of a task is unlikely or unforeseeable."  *Id.*  This means that even if a certain job could occasionally have tasks that do not align with a plaintiff's RFC, it does not mean the ALJ fails by relying on the VE to include it as a potential occupation Plaintiff is still able to perform.

Additionally, as the Commissioner points out, at least one of these jobs, marker, has already been found in this Circuit as not being fast paced, despite being described by Plaintiff's as needing the ability to "make fast . . . movements of the fingers" in the DOT definition.  (Doc. 10 at 15.), *See e.g.*, *Shannon C. S. v. Saul*, No. ED CV 19-874-PJW, 2020, at *1 (C.D. Cal. Apr. 13, 2020).  This evidences that there can be some discrepancy between a given rote definition and the practical job application as assessed by a VE and applied by an ALJ.  Therefore, Plaintiff may reasonably still be considered able to do the jobs listed here.

In sum, the Court agrees with the Commissioner that the DOT does not "purport to

list every detail . . . and every setting in which each job can be performed." While some of the potential settings or individual positions within broad occupation categories could arguably fall outside of a plaintiff's RFC, that does not mean that every, or even a majority of, positions within these categories does. (Doc. 11 at 12.) *See Gutierrez*, 844 F.3d at 807–08 ("Not all potential conflicts between an expert's job suitability recommendation and the Dictionary's listing of "maximum requirements" for an occupation will be apparent or obvious. And, to reiterate, an ALJ need only follow up on those that are.").

Therefore, because the ALJ correctly relied on VE testimony, she did not commit materially harmful error in the step five analysis.

## IV.     CONCLUSION

Therefore,

**IT IS ORDERED** affirming the January 22, 2021, decision of the ALJ, as upheld by the Appeals Council.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 20th day of September, 2023.

_____
Honorable Susan M. Brnovich
United States District Judge